## THOMAS BYRNE *v.* HEIRS OF MOSES HORNE.

A stockholder of an insolvent corporation obtained a judgment for a certain sum due to him as a creditor of the corporation, against the other stockholders, subject to a deduction of the amount of *pro rata* contribution, which the suing creditor might himself be called on to pay. All the stockholders but one appealed; and the judgment was reversed as to them. An attempt was made to collect the amount of the heirs of the stockholder who had not appealed, he having died in the mean time. *Held:* that the action could not be maintained, as the judgment itself required a liquidation of the affairs of the corporation, and the amount to be contributed by each stockholder to be ascertained, before it could be executed. .

APPEAL from the District Court of West Feliciana. *U. B. Phillips*, for the plaintiff, contended: The defence set up may be classed under three heads: 1. The errors committed by the plaintiffs in a former suit, and the judge who rendered the judgment. The one in asking for, and the other in rendering a judgment that was contrary to law and the evidence. 2. That the judgment has been reversed by the Supreme Court. 3. That the action is barred by the prescription of three years.

The defence, in fact, assumes the form of an action of nullity set up by way of a plea in reconvention. The Supreme Court has recognized such a mode of proceeding in the case of *Paxton* v. *Cobb, 2 L. R. 139. 3d* Ann. 328. They are, in fact, compelled to adopt this position or to treat the judgment as an absolute nullity on its face. The latter position will scarcely be seriously relied on, when *Millaudon, Dick* and others, found it necessary to obtain its reversal by the Supreme Court, in order to arrest its execution; and after the same court has distinctly recognized plaintiff's right of action, in its decree reported in 4th Ann. 187.

That the defence must be thus received or be virtually abandoned, is at once apparent. For the only modes known to our laws, by which a definitive judgment may be revised, set aside or reversed, are those pointed out in art. 556 of the Code of Practice. Of those, but one, " the action of nullity," is available for the defendants in this action.

Viewing the defence set up as an action to annul the judgment by way of a plea in reconvention, a tangible position is assumed, and the law applicable to it is readily referred to. The causes for which the nullity of a judgment may be demanded are two-fold: those relating to the form of proceeding, and those appertaining to the merits of the question. C. P. 605. No cause of nullity, resulting from any vice or form, has been set up. All the causes assigned relate to the merits of the question.

What are the causes, appertaining to the merits of the question tried, for which the nullity of a definitive judgment may be demanded? The answer to this is found in art. 607, C. P. "A definitive judgment may be annulled in all cases where it appears that it has been obtained through fraud or other ill practices, on the part of the party in whose favor it was rendered." See 5 M. R. 623; 1 R. R. 523; and 3d Ann. 646. In these cases this rule is fully recognized; and there must be no *laches* or negligence on the part of the party asking for relief.

By a careful examination of the grounds of nullity set up, it will be seen that no fraud or ill practice is charged against any person; the matters complained of were errors of the judge *a quo*, in not deciding according to law and the evidence; all of them defences of which the parties might have availed themselves before the judgment was rendered, or which might have been remedied by an appeal. They furnish no grounds, however, to sustain an action of nullity.

Having shown that no legal ground for annulling the judgment exists, it remains to be seen whether it has ever been reversed (as to these defendants) by the Supreme Court. *Millaudon, Dick, Augustine Le Blanc* and *Z. Porche,* appealed; and the judgment, now sought to be enforced, was reversed and remanded for further proceedings. 17 L. R. 397. 1 R. R. 394.

The defendants contend, and so the court below decided, that this decree inured to the benefit of all against whom the judgment was rendered, whether they were parties to the appeal or not; as an insurmountable difficulty would otherwise be presented, because the court decided, that the action in the suit of *Reynolds, Byrne & Co.* v. *The Feliciana Steamboat Company* was joint, and that all the defendants must be before it before any valid decree could be rendered. Whereas, should this judgment be held valid and be enforced against those who did not appeal, it would then be impossible for *Reynolds, Byrne & Co.*, or those who, by payment, might be subrogated to their rights, to get all the parties before the court *a quo*, and to proceed in conformity with the directions of the appellate court.

These anticipated difficulties, even if they existed to the full extent supposed, would furnish no ground for disregarding and nullifying a cardinal principle of the jurisprudence of this State and of all civilized nations. The provisions of art. 2082 of the Civil Code are applicable to this case; and shows that the payment of the debt, by one or more of those against whom the judgment stands good, would be no obstacle to keeping them in court until its final termination.

In 6 L. R. 227, Judge Martin, in overruling a motion for a re-hearing, said: "We have been requested to grant a re-hearing, because the judgment of the lower court is reversed absolutely, while it ought to have been so as to the appellant; all the parties against whom it was given not having appealed; and because, in remanding the case for further proceedings, we have not instructed the judge not to suffer the payments authorized by the homologation to be contested. It is so clear a point that a party against whom judgment is given, cannot avail himself, when he does not appeal, of its reversal on the appeal of a party joined with him below, that it is absolutely unnecessary to qualify the reversal of the judgment."

In relation to the first point made by the curator *ad hoc*, that the transfer from *Reynolds, Byrne & Co.* to the present plaintiff, was not established: the evidence on this, before referred to, is deemed full and conclusive, and is all that was required under the general issue plead by defendants.

*J. Hunter Collins,* and *Ratliff* and *Cowgill,* for the defendants, contended: In 1830, *Reynolds, Byrne & Co.* instituted suit against the stockholders of the Feliciana Steamboat Company, for a liquidation and settlement of the affairs of the company, and for a judgment for the sum of $7,934 34, with ten per cent interest from the 1st of May, 1828.

On the 18th of December, 1839, defaults having been previously taken, a final judgment was rendered against *Simon Porche, James C. Sinton, James Dick, Laurent Millaudon, Moses Horn et als., in solido*, for the amount of plaintiffs' demand, subject to a credit for the amount of stock owned by said plaintiffs, in proportion of seventy shares to three hundred and twenty-six shares, that being the whole number of shares. From this judgment *Dick, Millaudon, LeBlanc* and *Porche* appealed. The judgment of the lower court was reversed, and the case remanded for further proceedings according to law. *Reynolds, Byrne & Co.* v. *Feliciana Steamboat Company,* 17 L. R. 397.

In 1842, *Moses Horn* died in Tennessee, where he then resided, and, by his will, constituted *B. W. Cotton, Mary C. Cotton* and *Emily Dickson* his residuary legatees. On the 30th March, 1848, *Reynolds, Byrne & Co.* took a rule on these parties to show cause why execution should not issue against each, for one-third the amount of said judgment thus obtained against the testator. Being all absent, a curator *ad hoc* was appointed by the court to represent them.

The legatees had received from the executor of *Horn's* estate their share of the effects of the succession, which was settled under a decree of the Probate Court of West Feliciana, in June, 1844. An attempt was made to attach a note of theirs in the hands of their attorney, but the sheriff did not obtain possession of the note, and there was no process of garnishment. From a judgment discharging the rule, the plaintiffs appealed. The judgment of the lower court was affirmed. *Reynolds* v. *Horn,* 4th Ann. 187.

Shortly after this judgment had been affirmed by the Supreme Court, *Thomas Byrne,* the present plaintiff, claiming to be owner of the judgment in the case of *Reynolds, Byrne & Co.* v. *The Feliciana Steamboat Company,* instituted a suit in every respect similar to the present one. The curator *ad hoc* appointed by the court to represent the absent defendants, appeared and filed a notice to dissolve the attachment which had been obtained. Previous to this motion being acted upon, the plaintiff took a non-suit, and, on the same day, instituted the present action.

The whole of the proceedings in the case of *Reynolds, Byrne & Co.* v. *The Feliciana Steamboat Company,* are in evidence. The object of that suit, the court will perceive, by reference either to the transcript on file or to the reported case in the 17th L. R. 397, was a liquidation and settlement of the partnership affairs, the plaintiffs being stockholders and creditors of the company.

In addition to the reasons assigned by the court in their decision reversing the judgment of the lower court, and remanding the case for further proceedings according to law, and which, in the opinion of the appellees, are sufficient to support the point that the judgment is a nullity, they will offer a few others, which have suggested themselves in the investigation of this case, in arguing other points under this head.

The parties in that case, both plaintiffs and defendants, must be viewed as joint obligors. Article 2080 of the Civil Code says: "In every suit on a joint contract, all the obligors must be made defendants, and no judgment can be obtained against any, unless it be proved that all joined in the obligation, or are, by law, presumed to have done so." The next article requires the judgment to be rendered against each defendant separately for his proportion of the debt; and the next article requires that even if one of the joint obligors has paid his part of the debt he shall be made a party defendant.

Have the provisions contained in these articles of the code been complied with in this instance? Most clearly they have not. As the case now stands (for it is still pending) it presents the parties in a four-fold aspect: 1st. There are stockholders that never have been made parties, or, if they have, no citation has ever issued. 2d. There are parties who have been cited, against whom the case is still pending. 3d. There is a judgment against *Reynolds, Byrne & Co.,* by making allowance for what they owed themselves, as stockholders, in proportion to the number of shares held by them; and, 4th, a judgment *in solido* against *Moses Horn et als.*

It was the difficulty, or rather impossibility, of reconciling these opposite positions of the parties, and of carrying into effect the judgment rendered on the appeal of *Dick* and *Millaudon,* in the further prosecution of the case, that led the judge *a quo,* in the present case, to think that the reversal in favor of *Dick* and *Millaudon* inured to the benefit of all the parties, and that *Reynolds, Byrne & Co.'s* remedy against the present defendants, was to make them parties to the suit as representatives of *Horn.*

When the judgment in that case is compared with the pleadings, and with the facts as exhibited by the record, we are forced to believe that the judgment is an absolute nullity. If, however, the nullity should be only relative, the parties have clearly the right to plead it in bar whenever the judgment is sought to be enforced. In *Paxton* v. *Cobb,* 2 L. R. 137, the following language is used by the court: "The Code of Practice does not speak of the nullity of judgments being offered as an exception, and directs that suit shall be brought to set them aside; but we believe it is a general rule in jurisprudence, that wherever a man

may sue, he can except, where the matter which might have been annulled in an action is presented as the basis of his demand against him. The proposition seems as true in law as in morals, that what you have a right to attack and destroy, you may resist when it is used as a means of injuring you." This principle is also affirmed in *Delahoussaye* v. *Dumartrait*, 16 L. R. 91. *Marshall* v. *The Grand Gulf Railroad and Banking Company*, 12 R. R. 202. The two latter cases are applicable to the prescriptions plead by the plaintiff.

The counsel for the appellant has laid a good deal of stress on the language used by the court in their decision upon the rule taken by *Reynolds, Byrne & Co.* against the present defendants; and he assumes that because the court say "that the plaintiffs have their rights of action," it is tantamount to a judgment in their favor. We do not think that the language used by the court warrants such a conclusion: at the same time we do not pretend to deny that the plaintiff has no right of action; but we are clearly of opinion that he has mistaken his remedy in the present case. Let him prosecute the suit of *Reynolds, Byrne & Co.* v. *The Feliciana Steamboat Company*, to a final termination, and if he has the good fortune to get all the parties into court, and a judgment against them, he will then have a decree that can be enforced. This is equity, if it is not law. By such a construction, the plaintiff is in no worse situation than he was before; he suffers no damage. Whatever delays may have arisen (and we believe there have been none) have been caused by his own fault. On the other hand, it would be an act of manifest injustice to make these parties pay a debt to *Reynolds, Byrne & Co.*, who are, in justice and law, bound to a greater extent for its payment than these parties. United States Digest, vol. 2, Supplement, p. 224, Case 143. *Rangley* v. *Webster*, 11 New Hampshire, 299. *Ironsdale* v. *Donnell*, 4 Humphrey, 273.

The judgment of the court was pronounced by

EUSTIS. C. J. This is an action on a judgment rendered against *Moses Horn*, on the 3d of January, 1840. The plaintiffs in the original suit were *Reynolds, Byrne & Co.*; the present plaintiff sues as their assignee, and the defendants are sought to be charged with the debt as the sole heirs and universal legatees of *Horn*, they having accepted his succession. There was judgment for the defendants, as in case of non-suit, in the district court, and the plaintiff has appealed.

The case was once before this court, and is reported in 4th Ann. 187. The plaintiff had proceeded against the appellants in a summary manner by rule to show cause why execution should not issue against them on the judgment against their testator; but the court considered this mode of proceeding inadmissible, and affirmed the decision of the district court, discharging the rule and directing the party to proceed, if he willed, by ordinary action against the defendants.

The judgment on which the suit is brought is against *Moses Horn* and others *in solido;* it decrees that the plaintiffs recover from the said defendants, the sum of eleven thousand nine hundred and thirty-four dollars ninety-four cents, with interest on the same at ten per cent per annum, from the 1st May, 1828, till paid; subject to a credit for the amount of seventy shares—seven thousand dollars—owned by the plaintiffs as stockholders in the steamboat, according to the proportion which that number of shares bears to the whole amount of shares of said stock in said boat, being three hundred and twenty-six shares, on a *pro rata* of losses, to be struck between all the parties; and that said defendants pay costs of suit.

It will be perceived from the judgment itself that it was rendered in favor of creditor stockholders of a corporation, whose charter had terminated, against other stockholders. The case is reported in 17 L. R. 406. The Supreme Court reversed the judgment in favor of the appellants, who were a portion only of the stockholders defendant; but *Horn* and some others not having appealed, it

became a question, how far their responsibility on the judgment was affected by the decision of the Supreme Court.

We consider it quite useless to examine this and other matters presented in argument. The judgment speaks for itself; it is not final; it requires something to be done before it is complete; it requires the losses to be adjusted and the concern settled, and the amount to be contributed by each stockholder to be ascertained. It is clear that no action can be maintained upon it, as it stands against *Horn's* representatives.

The judgment of the district court is therefore affirmed, with costs.